# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 22-1585V

|  |  |
|---|---|
| CHARLES BENKIEL,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: January 24, 2025 |

*Jonathan Joseph Svitak*, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.

*Neil Bhargava*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On October 25, 2022, Charles Benkiel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on October 1, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of his alleged vaccine-related injury for more than six months, that he has provided preponderant evidence of onset within forty-eight hours, and that he has

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On November 17, 2023, about 13 months after the case was initiated, Respondent filed his Rule 4(c) Report opposing entitlement. *See* ECF No. 27. Respondent argues that had failed to establish that his shoulder pain began within forty-eight hours of his vaccination, and that he cannot satisfy the statutory severity requirement because his treatment ceased after four and a half months. Rule 4(c) Report at 6-8. Thereafter, Petitioner filed a Motion for Ruling on the Record on January 22, 2024, and Respondent filed a response on March 7, 2024. ECF No. 29-30.

The matter is now ripe for adjudication.

## II.    Factual History

The parties agree that Petitioner had no history of shoulder pain or dysfunction prior to vaccination. *See* Mot. at 2; Resp. at 2. Petitioner received both flu and Covid-19 vaccines in his left arm on October 1, 2021,[3] at a pharmacy in Elgin, Illinois. Ex. 6 at 1. He recalled "immediate pain at the time of the injection of 3/10 in severity," which increased in the following days "to the point that [he] had significant restrictions in the movement of [his] left arm." Ex. 1 at ¶6-7. He initially "believed the pain would resolve with regular movement and the passage of time," but instead his pain increased and his "range of motion became limited," causing him to seek medical treatment. *Id*. at ¶8.

On November 10, 2021 (40 days after his vaccination), Petitioner saw an orthopedic surgeon about his left shoulder pain, which he said he had been experiencing "for about the last month." Ex. 3 at 207. He told this treater that he was "not sure if this is related to the vaccinations he had in that arm." *Id*. On exam, Petitioner had reduced range of motion and positive impingement signs. *Id*. at 208. He was diagnosed with adhesive capsulitis or "frozen shoulder." *Id*. at 210. The doctor explained that his condition "typically resolves between three and twenty-four months after onset," but that recovery could be "hastened" with "steroid injection with therapy, manipulation under anesthesia, and arthroscopic capsular release." *Id*. Petitioner opted to receive a cortisone injection and begin physical therapy. *Id*.

Petitioner returned to his orthopedic surgeon on December 8, 2021, for a follow-up appointment. Ex. 3 at 196. He reported that the cortisone injection had provided some

---

[3] Respondent has not argued that the non-covered COVID vaccine was the actual cause of Petitioner's SIRVA. In addition, since a covered vaccine was clearly obtained by Petitioner, I find that it cannot be excluded as a "substantial factor" in his injury – even if the non-covered vaccine was also deemed causal. *Shyface v. Secretary of Health & Human Services*, 165 F.3d 1344, 1352 (Fed. Cir. 1999).

2

relief, but that he had been experiencing continued pain with reaching, rotating, and sleeping. *Id.* The doctor ordered an MRI and encouraged him to begin physical therapy. *Id*. The MRI showed mild tendinosis, a partial thickness tear, and mild degenerative joint disease of the AC joint. Ex. 3 at 197.

On December 22, 2021, Petitioner had a physical therapy evaluation. Ex. 2 at 22. He reported left upper extremity symptoms that had "been going on ever since getting flu shot and COVID booster; started October 1st." *Id*. During the evaluation, Petitioner demonstrated mild limitations in range of motion and reported pain up to 8/10 in the past 24 hours. *Id*. at 23. Treatment was recommended twice a week for four weeks. *Id*. at 24. He attended a total of six physical therapy treatments through February 10, 2022. *Id*. at 6. At his final treatment, Petitioner believed his shoulder was worsening, and he continued to have limitations at the end ranges of motion and had had "limited progress with therapy." *Id*. at 7. He was advised to follow up with his doctor. *Id*.

On February 16, 2022, (four and a half months after vaccination) Petitioner returned to his orthopedic surgeon for a follow up. Ex. 3 at 193. He reported continuing, but not constant, pain, and some, but not full, relief from the cortisone injection and physical therapy. *Id*. On exam, he had continued range of motion deficits and positive impingement signs. *Id*. The doctor advised Petitioner that "his options are to live with this, consider repeat injection and therapy which is less predictable, or proceed with surgery." *Id*.

Petitioner alleges that he "decided against surgery and decided to live with his symptoms," which continued after his treatment concluded in February 2022. Mot. at 5. He stated that for more than a year after his vaccination, he continued to have pain with certain movements ("at least one episode of sharp pain every day") and pain that wakes him from sleep at night. Ex. 1 at ¶18. He noted difficulty with reaching, dressing, and putting on a coat, and limitations that "require [him] to use [his] left arm to avoid increasing [his] pain." *Id.*

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at

3

\*4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at \*3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at \*19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering

4

such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Findings of Fact

### A. *Onset*

Respondent maintains that Petitioner has not established Table onset because "there is no evidence in Petitioner's most contemporaneous medical records, other than his word, that the onset of Petitioner's SIRVA occurred within 48 hours of vaccination." Rule 4(c) Report at 6. While Respondent is correct that the first record in which Petitioner sought treatment does not corroborate onset within the required period, Petitioner did specifically report onset on October 1, 2021 (the day of vaccination) when he began physical therapy, about two months post-vaccination. *See* Ex. 2 at 22. Further, although the initial shoulder-related treatment record is imprecise about onset – with Petitioner stating he had had pain for "about a month" – he related this pain to his vaccination in both records. *See id*; *see also* Ex. 3 at 207.

Petitioner also has provided affidavit testimony in which he recalled that he had "immediate pain at the time of the injection of 3/10 in severity," increasing in the following days "to the point that [he] had significant restrictions in the movement of [his] left arm." Ex. 1 at ¶6-7. He initially "believed the pain would resolve with regular movement and the passage of time," but instead his pain increased and his "range of motion became limited." *Id*. at ¶8. Petitioner's affidavit testimony is not inconsistent with the medical records, while providing additional detail that adds to the totality of evidence supporting onset.

Accordingly, I find there is preponderant evidence to conclude that the onset of Petitioner's pain began within forty-eight hours of his vaccination.

### B. *Severity*

To establish six months of residual effects, Petitioner must demonstrate that his symptoms more likely than not continued until at least April 1, 2022. The record establishes (and the parties agree) that Petitioner had continuous treatment for his injury

through February 16, 2022 – approximately four and a half months after vaccination. Respondent argues that Petitioner "did not seek any further care or treatment for his alleged SIRVA, although he had numerous opportunities to do so." Resp. at 7. But although I agree that the record is very thin on this issue, I find there is bare preponderant support for the finding that Petitioner's symptoms likely continued for at least six months from onset.

At the conclusion of his course of physical therapy – on February 10, 2022 – Petitioner felt that his shoulder was worsening. Ex. 2 at 7. On exam, he continued to have limitations at the end ranges of motion, had demonstrated "limited progress with therapy," and was advised to seek further care. *Id*. Six days later, Petitioner returned his orthopedic surgeon. Ex. 3 at 193. At that time, Petitioner continued to have pain, limited range of motion, and positive impingement signs. *Id*. His doctor advised him that "his options [were] to live with this, consider repeat injection and therapy which is less predictable, or proceed with surgery." *Id*. Although Respondent notes that Petitioner "did not have constant pain, and he further denied nighttime pain," at his last appointment, the record is clear that Petitioner's injury had not resolved at that time, and further, that the recommended treatment was significant – including surgery. Resp. at 7; Ex. 3 at 193. Therefore, it is reasonable to conclude that Petitioner's SIRVA symptoms had not resolved in the 44 days following his appointment, up to the six-month onset anniversary.

In addition, Petitioner has provided a credible explanation for why he did not seek further treatment. He explained that he "decided against surgery and decided to live with his symptoms." Mot. at 5. He further stated that for more than a year after his vaccination, he continued to have pain with certain movements ("at least one episode of sharp pain every day") and pain that woke him from sleep at night. Ex. 1 at ¶18. He also noted continued difficulty with reaching, dressing, and putting on a coat, and limitations that "require [him] to use [his] left arm to avoid increasing [his] pain." *Id.* Again, Petitioner's testimony here does not conflict with the medical records. Finally, there is no evidence that Petitioner's symptoms had resolved.[4]

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on this issue. Of course, since the severity requirement has barely been met, this is not a matter in which a substantial pain and suffering award is appropriate – and Petitioner should keep this in mind when making any demand.

---

[4] Respondent notes that Petitioner had other medical visits on May 7, 2022 and July 8, 2022 which do not reference any shoulder pain. Resp. at 7. However, Petitioner's testimony is consistent with these records as he stated that he opted not to seek additional treatment and to live with his ongoing symptoms.

6

### V.    Ruling on Entitlement

####     A.    *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that his pain began within 48 hours after his vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

####     B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccine in his left deltoid on October 1, 2021 at a pharmacy in Illinois. Ex. 6 at 1; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. *See* Petition at ¶23-24; Ex. 1 at ¶22-23; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master